TIMOTHY L. MAYO & another *vs.* J. A. PRESTON.

Suffolk.   March 3. — June 29, 1881.   ENDICOTT & DEVENS, JJ., absent.

The owner of a vessel chartered it for a round sum, for a voyage to a foreign
port and back, reserving a portion of the vessel for the use of the officers and
crew.   A part of the charter money was payable at the outward port, and the
remainder on the return of the vessel and proper delivery of the cargo.   The
consignee of the charterer at the foreign port refused to receive certain pack-
ages which formed a part of the outward cargo, and the master placed them
in that part of the vessel reserved for his use, and did not include them in the
bill of lading given for the return cargo.   Proper delivery of the return cargo
was made, but on arrival at the home port one of the packages was found to
be broken open, and a portion of the contents gone, without negligence on the
part of the officers or crew of the vessel.   *Held,* in an action for the charter
money, that the packages formed no part of the return cargo; that as to them
the master of the vessel was an involuntary bailee; and that, on the facts of
case, the charterer could not recoup the value of the missing goods.

MORTON, J.   By the charter-party, upon which this action is
brought, the plaintiffs chartered to the defendant the schooner
Samuel Wackrill for a voyage from Boston to Gonaives, Hayti,
and back to Boston; and agreed that " the whole of said vessel,
with the exception of the cabin and the necessary room for the
accommodation of the crew, and the storage of sails, cables and
provisions, should be at the sole use and disposal of the defend-
ant during said voyage."   The defendant stipulated that he
would pay for the charter or freight of said vessel, for the voy-
age out and back, $1375, payable, $50 to the master at the port
of discharge, " and balance on return of vessel and proper deliv-
ery of cargo at port of destination in the United States."

The defendant contends that, under this contract, the proper
delivery of the return cargo at Boston was a condition precedent
to the plaintiffs' right to recover freight.   Assuming this to be
so, and that the burden of proof is upon the plaintiffs to show a
compliance with this condition, the question arises whether,
upon the whole evidence and the facts proved, they have sus-
tained this burden.   It appeared, at the trial, that the plain-
tiffs made proper delivery at Boston of all the goods on board
the vessel upon her return voyage belonging to the defendant,
except four rifles.   In regard to these rifles, the following facts
appeared: Among the cargo which the defendant shipped on

board for the outward voyage were four cases of "fire-arms," and bills of lading, in the usual form, were given for the cargo, including these cases, to be delivered at Gonaives. Upon the arrival of the vessel at Gonaives, there was a rebellion in Hayti, and an actual state of war existed between the people and the government. The captain proposed to land the cases, but the defendant's consignee refused to receive two of the cases, which contained rifles, apprehending difficulty with the government if he did so. Whereupon the captain placed them in a room in the vessel, kept by him as a store-room for sails and other articles, where they remained during the return voyage. He then took on board a return cargo of logwood consigned to the defendant, and gave a bill of lading for the return cargo, which did not include and contained no allusion to the two cases of rifles. Upon the delivery of the cases at Boston to the defendant, it was found that four rifles were missing; and the defendant claims the right to deduct their value from the balance of the freight due under the charter-party.

It seems to us, upon these facts, that the cases of rifles were not a part of the return cargo under the charter-party, so that the proper delivery of them was a condition precedent to the plaintiffs' right to recover their freight. They were a part of the outward cargo. The only contract made by the plaintiffs in reference to them was fully performed when the captain offered to deliver them to the defendant's consignee at Gonaives. The refusal to receive them was the act of the consignee, and not of the captain. The effect of the refusal was to throw them upon the hands of the captain as an involuntary bailee. He was not bound to bring them back to Boston, but might have stored them in a safe place at Gonaives. The fact that he stored them in the sail-room, a part of the vessel reserved for his use, did not make them a part of the return cargo. The defendant or his consignee took no step to ship them as cargo; the bill of lading, which the master is required to sign, and which, though it does not supersede the charter-party, is the usual and strong evidence of the shipping of the particular goods to be conveyed in pursuance of the charter-party, contained no reference to them. Abbott on Shipping (5th Am. ed.) 277. They were not in fact shipped as a part of the return cargo, and we are of

opinion that they remained throughout in the custody of the captain as an involuntary bailee. They were not, therefore, within the terms of the charter party which required the proper delivery of cargo at Boston as a condition precedent of the right to receive the freight, and the only remedy which the defendant has against the plaintiffs, if any, is a cross action, or a defence by way of recoupment, for their negligence as bailees. In such a defence, it is not sufficient for the defendant to prove merely that his goods have been stolen while in the possession of the bailee. The burden is upon him to show that they were stolen through the negligence of the bailee. *Lamb* v. *Western Railroad*, 7 Allen, 98. In the case before us, the presiding justice of the Superior Court, who tried the case without a jury, has found as facts that the four rifles were stolen after the vessel left Gonaives; and that there was no evidence that it was owing to any negligence on the part of the plaintiffs, or of the officers or crew of the vessel. It follows that his final ruling, that "the plaintiffs are entitled to recover the whole charter money claimed," was correct.

*Judgment for the plaintiffs accordingly.*

*L. S. Dabney*, for the defendant.

*C. T. Russell, Jr. & W. E. Russell*, for the plaintiffs.

